**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>SCOTT ALAN LANZ,<br>SSN: xxx-xx-7844,<br><br>Debtor. | Case No. 25-14677-JGR<br>Chapter 13 |

## ORDER CONFIRMING CHAPTER 13 PLAN

On June 17, 2026, the Court held an in-person evidentiary hearing regarding confirmation of the Debtor's Amended Chapter 13 Plan filed March 5, 2026 (Doc. 64) and the Objection to Confirmation of Chapter 13 plan filed by the Chapter 13 Trustee ("Trustee") on March 23, 2026 (Doc. 67). This case involves the tedious exercise of closely examining income and expenses of a consumer debtor to determine net disposable income.

## PROCEDURAL BACKGROUND

The Debtor, Scott Alan Lanz ("Debtor"), filed for relief under chapter 13 of the Bankruptcy Code on July 26, 2025 (Doc. 1). Schedule I, attached to the petition, calculated monthly income in the amount of $3,958.18. Expenses on Schedule J totaled $3,300.15, resulting in net monthly income of $658.03. Because the Debtor was below median income, his initial Chapter 13 Plan (Doc. 6) called for payments over a 36-month period in the amount of $658.03 per month for a total of $23,689.09. The plan proposed payments for unpaid attorney's fees in the amount of $4,913.00; the Trustee's commission in the amount of $2,368.80; Class Three secured claims in the amount of $10,455.79; and Class Four unsecured claims in the amount of $5,950.00.

Objections to the Debtor's initial plan were filed by Golden Belt Bank, FSA ("Bank") (Doc. 15) and the Trustee (Doc. 14). The Bank's objection was based on the plan's failure to adequately provide for the cure of the prepetition mortgage arrearage and to identify the correct the monthly amount for post-petition payments. The Trustee's Objection raised various drafting errors with the plan, including that the plan did not require payments to commence within 30 days of filing, the plan proposed to strip liens without appropriate orders, the Debtor's income appeared to be understated, and prepetition garnishments were not reconciled.

The Debtor's second plan, filed on September 25, 2025 (Doc. 20), provided for an initial monthly payment of $658.03, followed by 35 monthly payments in the amount of $1,169.37 for a total amount of $41,585.98. The second plan proposed payments for

unpaid attorney's fees in the amount of $4,913.00; the Trustee's commission in the amount of $2,736.70 (which was incorrect); Class Two, prepetition mortgage arrearages, in the amount of $9,306.00; and Class Four, unsecured claims, in the amount of $24,630.28.

The payments under the second plan were based on the Debtor's Amended Schedules I and J filed September 25, 2025 (Docs. 24, 25). Amended Schedule I showed income in the amount of $4,904.52. Amended Schedule J showed expenses in the amount of $3,735.15. Net income was calculated to be $1,169.37.

The second plan drew objections from the Bank (Doc. 35) and the Trustee (Doc. 34). The Bank's objection was the same as its previous objection that the plan failed to cure its prepetition mortgage arrearage and to provide for the correct monthly amount of post-petition mortgage payments. The Trustee's objection raised drafting errors and the failures to commence payments within 30 days of the filing of the case, provide for accurate payments to the Bank, include the reconciliation of the prepetition garnishments, and properly fund the Trustee's commission. The objection did not raise disposable income as an issue.

The Debtor's third plan, filed on November 6, 2025 (Doc. 41), provided for two monthly payments in the amount of $658.03, followed by one payment in the amount of $960.00, followed by 33 monthly payments in the amount of $399.99 for total payments of $15,475.73. However, the plan's proposed payments were obviously insufficient to meet the plan's total distributions of $23,706.03. The third plan proposed payments for unpaid attorney's fees in the amount of $4,913.00; the Trustee's commission in the amount of $1,575.73 (which was again incorrect); Class Two, prepetition mortgage arrearages, in the amount of $11,658.25; and Class Four unsecured claims in the amount of $5,587.21.

On November 6, 2025, the Debtor filed second Amended Schedules I and J (Docs. 42 and 45). The new Amended Schedule I showed monthly net income in the amount of $3,759.69. Expenses listed on the new Amended Schedule J totaled $3,359.70, resulting in net monthly income of $399.99.

Objections were filed by the Bank (Doc. 53) and the Trustee (Doc. 52). The Bank's objection was the same as its previous objections. The Trustee's objections included the same concerns as to the proposed treatment of the Bank's claims, the plan's failure to include all disposable income, and failure to reconcile the prepetition garnishments. The objection also raised the discrepancy between the total proposed payments in the amount of $15,475.73 and the total distributions under the plan of $23,706.03.

Under the fourth plan filed on December 26, 2025 (Doc. 56) the Debtor was to make five monthly payments in the amount of $535.21, followed by 31 monthly payments in the amount of $394.03, for a total amount of $14,890.98. The fourth plan proposed payments for unpaid attorney's fees in the amount of $4,913.00; the Trustee's commission in the amount of $1,353.73; and Class Two, prepetition mortgage arrearages,

in the amount of $8,624.25. The fourth plan did not provide for a distribution to unsecured creditors.

Objections were filed by the Bank (Doc. 60) and the Trustee (Doc. 59). The Bank's objection noted that amount to cure the arrearage was correct in the plan but that the post-petition monthly payment had increased to $1,216.86. The Trustee's objection included the incorrect post-petition monthly payment to the Bank, and the failures to provide for the payment into the plan of all disposable income and include the reconciliation of the prepetition garnishments.

## THE DEBTOR'S FIFTH PLAN

On March 5, 2026, the Debtor filed his fifth plan, which is the plan before the Court for confirmation. The fifth plan provides for 36 monthly payments in the amount of $417.81 for a total of $15,041.40. In addition, the plan identifies avoidable preferences in the amount of $8,230.30 attributable to prepetition garnishments. Part 12 of the fifth plan provides: "Any amounts recovered under the Trustee's avoidance powers will be distributed to Class Four creditors in addition to amounts presently funded through the Plan." The fifth plan proposes payments for unpaid attorney's fees in the amount of $4,913.00; the Trustee's commission in the amount of $1,504.15; and Class Two, prepetition mortgage arrearages, in the amount of $8,624.25.

The Bank's objection to the fifth plan, filed on March 26, 2026 (Doc. 68), was withdrawn on April 9, 2026 (Doc. 69).

The Trustee's Objection to Confirmation of Chapter 13 Plan, filed on March 23, 2026 (Doc. 67), complained that the Debtor was not contributing all disposable income to the plan.

On April 16, 2025, the Court conducted a preliminary hearing to schedule an in-person evidentiary hearing on confirmation of the Debtor's fifth chapter 13 plan and the Trustee's Objection for Wednesday, June 17, 2026 (Doc. 71).

## EVIDENTIARY HEARING

The evidentiary hearing was conducted in-person on June 17, 2026. The Debtor was sworn, testified, and cross-examined at the hearing. No other witnesses testified. Unfortunately, both parties used letters to mark their respective exhibits despite the Court's courtroom procedures regarding exhibits, which requires the movant, in this case the Debtor, to use numbers. The Debtor's error makes the discussion of the exhibits problematic.

The Debtor offered a summary of pay advices (Debtor's Exhibit A) which was admitted over the Trustee's objection. The Debtor also offered a summary of post-petition pay advices (Debtor's Exhibit B). The Trustee objected on the basis that the Debtor did not timely designate such exhibit, and the Court sustained the objection.

The Court admitted five exhibits from the Trustee into evidence. Trustee's Exhibit A, the Debtor's fifth plan, was endorsed, but it was not offered or admitted. Trustee's Exhibit B was the Debtor's chapter 13 petition (Doc. 1). Trustee's Exhibit C consisted of copies of pay advices, which was admitted over the Debtor's objection that the exhibit was incomplete because it did not include all the paystubs for the relevant period. Trustee's Exhibit D, the Debtor's Amended Schedules I and J (Docs. 24, 25) was admitted without objection. Trustee's Exhibit E, the Debtor's second Amended Schedules I and J (Docs. 42, 25) was admitted without objection. Trustee's Exhibit F, a demonstrative exhibit summarizing the Debtor's paystubs, was admitted over the Debtor's objection that the exhibit was not accurate.

On June 16, 2026, the day before the evidentiary hearing, the Debtor filed a third Amended Schedule I showing net monthly income of $4,733.91 (Doc. 83) and an amended Chapter 13 Statement of Current Monthly Income (Doc. 84). On the morning of the evidentiary hearing, the Debtor filed a third Amended Schedule J (Doc. 87). Debtor's counsel advised the Court that the third Amended Schedule J was a combination of Internal Revenue Service ("IRS"), allowances and actual expenses of the Debtor. Using the blended expense amounts, monthly expenses totaled $4,568.15, resulting in monthly net income of $165.76. The Debtor's filing of the fourth set of Schedules I and J immediately before the evidentiary hearing was unfair to the Court and the Trustee and yet another error on the part of his bankruptcy counsel.

The Trustee argued the blended expenses were not appropriate because the Debtor is a below-median income debtor not entitled to use the IRS standards. The Trustee's position was that the Debtor was only able to claim actual expenses.

On direct examination, the Debtor confirmed the fifth plan required payments in the amount of $417.81 per month for 36 months. He testified he was current on his plan payments and able to maintain the payments over the term of the plan. The Debtor testified he would not be able to make payments of $1,000 or more per month.

The Debtor identified Debtor's Exhibit A as a summary of his paystubs. The Trustee objected to the admission of Debtor's Exhibit A on the grounds of timeliness, unfair prejudice, hearsay, authentication, and asserted the exhibit was an inappropriate summary exhibit. The Trustee's objections were noted for the record but overruled and Debtor's Exhibit A was admitted.

The Debtor testified that in March 2025, his company was reorganized and adopted a policy of limiting overtime work and that he has no control over whether overtime work will be required or available in the future. He testified that prior to the bankruptcy, three out of four paystubs did not reflect overtime pay.

The Debtor further testified he suffered a heart attack in March 2025, which caused him to miss work.

The Debtor identified Debtor's Exhibit B, which consisted of the same information included in Exhibit A, limited to the post-petition period. The Trustee objected to the admission of Debtor's Exhibit B because was not disclosed until the morning of the hearing. The objection was sustained and Debtor's Exhibit B was not admitted.

On cross-examination, the Debtor confirmed that 19 of the 32 paystubs referenced in Debtor's Exhibit A included overtime pay.

The Debtor identified Trustee's Exhibit B, his Bankruptcy Petition, Schedules & Statements, which was admitted without objection. The Debtor confirmed that the income and expenses listed in the initial Schedules I and J were accurate as of the time the bankruptcy was filed.

The Debtor identified Trustee's Exhibit D, Amended Schedules I and J, filed on September 25, 2025, which was admitted without objection. While the amended schedules indicated net income of $4,904.52 and expenses of $3,735.15, resulting in net income in the amount of $1,169.37 per month, the Debtor testified that he was accustomed to receiving net income of approximately $1,800.00 per paycheck or $3,600.00 per month and claimed the $4,900.00 net income per month figure could not be correct. He testified he did not have the ability to make plan payments of over $1,000.00 a month.

The Debtor identified Trustee's Exhibit E, the second Amended Schedules I and J, filed on November 6, 2025, which was admitted without objection. The Debtor testified the monthly net income of $399.99 was more accurate and he would have the ability to make payments in the range of $400.00 per month throughout the term of the plan.

The Debtor identified Trustee's Exhibit C. The Debtor objected to the Trustee's Exhibit C on the basis that the information in Trustee's Exhibit C was incomplete. Since the Trustee represented that the exhibit contained all paystubs provided to the Trustee by the Debtor, the Court overruled the objection, and Trustee's Exhibit C was admitted. The Debtor confirmed that beginning in January 2025, his earnings were garnished, resulting in lower take-home income.

Trustee's Exhibit F was admitted as a summary exhibit over the Debtor's objection as to accuracy. Trustee's Exhibit F was prepared by the Trustee from the paystubs provided by the Debtor and, where applicable, funds garnished from any particular paycheck were added to net pay for the purposes of determining historical income.

The Court examined the Debtor. He testified he is 60 years old, works in the oil and gas industry inspecting oil drilling pads in Weld County using a work truck provided by his employer. The Debtor testified he is paid on an hourly basis at the rate of $28.50. He stated he normally works 40 hours per week and is paid on a biweekly basis.

His personal vehicle is a 1996 Chevy pickup truck. The Debtor testified his mortgage is $1,217.00. The Debtor confirmed he fell behind on the mortgage in the

amount of approximately $8,000.00, which is why he filed bankruptcy, to save his home.

The Debtor testified that he had a heart attack in March of 2025, which resulted in a hospital stay of two or three days. The Debtor testified two years earlier, in June of 2023, he had a heart attack which also resulted in a hospital stay. The Debtor testified he gets health insurance through work.

The Debtor testified the current plan payment is $417.81 per month and that he is current on those plan payments. The Debtor testified that he could not pay anything near $1,000.00 per month.

## ANALYSIS

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334(a). The proceeding has been referred to this Court under 28 U.S.C. § 157(a) and D.C.COLO.LCivR 84.1(a). Venue is proper under 28 U.S.C. § 1409(a).

This is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (L). The dispute involves matters concerning the administration of the estate and confirmation of the Debtor's chapter 13 plan.

The Trustee objected to confirmation of the Debtor's plan pursuant to 11 U.S.C. §§ 1325(a)(3), (a)(7), and (b)(1)(B).

### Good Faith

11 U.S.C. § 1325(a)(3) requires that the plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1325(a)(7) requires that the action of the debtor in filing the petition was in good faith.

A chapter 13 debtor bears the burden of proof to establish good faith. *In re Davis*, 239 B.R. 573, 577 (10th Cir. B.A.P. 1999).

> In analyzing whether a debtor filed a petition or proposed a plan in good faith, bankruptcy courts must consider the totality of the circumstances and determine "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter]." To guide bankruptcy courts in doing so, the Tenth Circuit has adopted a non-exhaustive list of factors relevant to a determination of whether a chapter 13 plan has been filed in good faith. A "finding that a proposed chapter 13 plan is lacking in good faith should be reserved for cases in which debtors exhibit serious misconduct or abuse or unfair manipulation of the [Bankruptcy] Code."

*Instant One Media, Inc. v. Shank (In re Shank)*, No. KS-23-016, 2024 Bankr. LEXIS 872, at *7 (B.A.P. 10th Cir. Apr. 8, 2024).

The Court finds that the actions of the Debtor in filing the chapter 13 bankruptcy petition and proposing a chapter 13 plan were in good faith. The Debtor's testimony was credible. He is 60 years old working outdoors in a physically demanding job. He has suffered serious medical issues in recent years that caused him to fall behind on his mortgage payments and other debts. His only significant assets are his house valued at $214,150.00 and a 1996 truck valued at $1,784.00. He does not have a 401k. His Statement of Financial Affairs (Trustee's Exhibit B) reflects multiple judgments have been entered against him. The bankruptcy filing was precipitated by the ongoing garnishment of his wages, medical expenses not covered by health insurance, and a reduction in overtime pay.

The Court notes the symmetry between the mortgage arrearages provided for under the plan, $8,624.25, and the prepetition garnishments totaling $8,230.30. Through the bankruptcy filing and his proposed plan, the Debtor seeks to save his home by curing the mortgage arrearage over time. Saving a home is one of the principal purposes of chapter 13.

The plan provides that any potential recovery from preference litigation to avoid and recover the prepetition garnishments will be paid to the holders of Class Four unsecured claims. A review of the Court's Claim Register for the case reflects seven proofs of claim were timely filed. The Bank filed Proof of Claim 5-1 on account of the secured mortgage. The unsecured claims consist of: Proof of Claim 1-1, filed by Capital One, N.A., in the amount of $3,872.51; Proof of Claim 2-1, filed by Upgrade, Inc., in the amount of $3,873.41; Proof of Claim 3-1, filed by Upgrade, Inc., in the amount of $9,917.84; Proof of Claim 4-1, filed by Quantum3 Group LLC, in the amount of $1,671.20; Proof of Claim 6-1, filed by Wells Fargo Card Services, in the amount of $4,882.90; and Proof of Claim 7-1, filed by LNVN Funding, in the amount of $2,526.00. The amount of timely filed unsecured claims totals $26,743.86. Recovery of the preferential transfers would be an arduous task which would incur attorneys' fees and expenses and only result in a potential dividend of a maximum of approximately 30% for unsecured creditors. Nevertheless, any potential recovery inures to benefit of unsecured creditors.

The Debtor's fifth plan cures the mortgage arrearage, allowing him to save his home, while preserving the preferential transfer claims for the benefit of unsecured creditors. In considering the testimony and demeanor of the Debtor, the admitted exhibits and the totality of the circumstances, the Court finds the Debtor's fifth plan was proposed in good faith.

**Contribution of Disposable Income**

11 U.S.C. § 1325(b)(1)(B) provides that if the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—the plan provides that all of the

debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(2) states:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended— (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made.

Under 11 U.S.C. § 1325(b)(3), because the Debtor is a below median-income debtor, the standards imposed under 11 U.S.C. § 707(b)(2) are not required to be utilized to calculate disposable income. Below median-income debtors are entitled to their actual expenses in formulating disposable income.

The starting point for a calculation of disposable income begins with the income side of the equation. Debtor's Exhibit A is a summary of Debtor paychecks received during the period from January 2025 through May 2026. Using net take home pay, the Debtor calculates average monthly income over the period in the amount of $4,417.10.

Trustee's Exhibit F is a summary of the Debtor's paychecks covering the period between January 2025 through March 2026. The Trustee calculates prepetition monthly income in the amount of $4,904.93 and post-petition income in the amount of $5,078.64.

The Trustee's calculation of prepetition income is higher than the Debtor's calculation because the Trustee added the garnishment amount for each paycheck into the net monthly income figure. However, the Trustee's calculation of post-petition income is overstated. The Trustee's calculation is missing paychecks for 8/15/2025 ($1,648.14); 8/29/25 ($1,879.58); 9/12/25 ($1,979.13); 9/26/25 ($1,838.36); 12/5/25 ($2,323.47); 12/12/25 ($300.00); 12/19/25 ($2,305.63); 3/27/26 ($1,755.61); 4/10/26 ($1,805.62); 4/24/26 ($1,836.02); 5/8/26 ($1,805.62); 5/22/26 ($2,078.23). When the missing paychecks are considered, over the 10-month post-petition period, the Debtor's net take-home pay totaled $47,339.25 for a monthly average of $4,733.93. The Court finds the

Debtor's Amended Schedule I (Doc. 83) is accurate.

The Court found credible the Debtor's testimony regarding his actual disposable income. Thus, the Debtor's itemization listing of his actual expenses must be scrutinized.

By way of illustration, the Debtor filed the Amended Schedule J (Doc. 87) using standard IRS allowances, which would result in monthly expenses of $4,568.15, leaving monthly disposable income of $165.70. Included in the hypothetical expenses is a vehicle ownership allowance of $662.00. However, as the Supreme Court instructed: "Because the 'Ownership Costs' category covers only loan and lease payments and because [the Debtor] owns his car free from any debt or obligation, he may not claim the allowance. In short, [the Debtor] may not deduct loan or lease expenses when he does not have any." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 80, 131 S. Ct. 716, 730 (2011).

The IRS monthly collection financial standards for food, clothing, and other items are: food ($497.00), household supplies ($45.00), apparel and services ($93.00), personal care products and services ($50.00), and miscellaneous ($154.00). The IRS allowance for healthcare expenses is $84.00 per month. The IRS national monthly allowance for public transportation costs is $244.00. The IRS monthly allowance for vehicle operating costs is $297.00.

A review of the prior schedules shows the Debtor was not listing his actual expenses but using a combination of actual expenses and IRS standard allowances.

The initial Schedule J disclosed food and household supplies in the amount of $542.00; clothing, laundry, and dry cleaning in the amount of $93.00; personal care products and services in the amount of $50.00; miscellaneous expenses of $154.00, and medical expenses of $84.00. The Debtor claimed the same amounts as the IRS standard allowances for these various expense categories. The Debtor claimed vehicle expenses of $244.00, the same amount as the IRS standard for public transportation costs. It is unclear why the public transportation allowance was used instead of the vehicle operating expense allowance. The Amended Schedule J (Trustee's Exhibit D) showed the same expense amounts.

The second Amended Schedule I reduced monthly income from $4,904.52 to $3,795.69. As a result, the Debtor reduced his claimed expenses to reach a plan payment amount of approximately $400.00. Food and housekeeping supplies were reduced to $447.00. Transportation costs were reduced to $197.00 (the $244.00 public transportation allowance less auto-insurance of $53.00). A miscellaneous expense claim of $154.00 was eliminated, but entertainment costs previously listed at $50.00 a month were increased to $154.00. In total, the Second Amended Schedule J reduced expenses from $3,735.15 to $3,359.70.

A comparison of the initial Schedule J (Doc. 1), the Amended Schedule J (Doc. 25), the second Amended Schedule J (Doc. 45), and the hypothetical Schedule J, which blended IRS standards for housing, utilities, and vehicle ownership with previously

claimed expenses (Doc. 87) follows:

| **Expenses** | **Doc. 1** | **Doc. 25** | **Doc. 45** | **Doc. 87** |
|---|---|---|---|---|
| Home Ownership | $1,025.00 | $1,200.00 | $1,243.59 | $1,286.00 |
| Home Maintenance | $0.00 | $35.00 | $35.00 | $672.00 |
| Additional Mortgage Payments | $779.00 | $779.00 | $581.96 | $0.00 |
| Electricity, Heat, Natural Gas | $35.00 | $295.00 | $265.00 | $365.00 |
| Water, Sewer, Garbage | $96.15 | $96.15 | $96.15 | $196.15 |
| Phone, Internet, Cable | $60.00 | $60.00 | $60.00 | $60.00 |
| Food, Housekeeping Supplies | $542.00 | $542.00 | $447.00 | $542.00 |
| Clothing, Laundry | $93.00 | $93.00 | $93.00 | $93.00 |
| Personal Care | $50.00 | $50.00 | $50.00 | $50.00 |
| Medical, Dental | $84.00 | $84.00 | $84.00 | $84.00 |
| Transportation | $244.00 | $244.00 | $195.00 | $197.00 |
| Entertainment, etc. | $50.00 | $50.00 | $154.00 | $154.00 |
| Vehicle Insurance | $53.00 | $53.00 | $53.00 | $53.00 |
| Car Ownership | $0.00 | $0.00 | $0.00 | $662.00 |
| Miscellaneous | $154.00 | $154.00 | $0.00 | $154.00 |
| **Total** | $3,300.15 | $3,735.15 | $3,359.70 | $4,568.15 |

The Court finds that the comparison of the filings illustrates the inaccuracies in the Debtor's expenses. On the other hand, the Debtor credibly testified that his disposable monthly net income was approximately $400.00 a month. This case illustrates that the calculation of monthly income and expenses of any bankruptcy debtor in a chapter 13 case is a moving target.

The Court finds the Debtor's testimony represents the best evidence of his disposable net monthly income and is sufficient to overcome the Trustee's objection. People know how much they have left to spend after they get paid and pay their monthly expenses. The Court also takes judicial notice of the current inflation rate of 3.7% and the recent significant increases in the cost of healthcare, food and gas. The Court

FURTHER FINDS that dismissal of the Debtor's current chapter 13 case is not in the best interest of creditors or the appropriate result because the Debtor would lose the ability to cure the mortgage arrearage over time through a plan while the automatic stay is in effect. Moreover, the potential recovery of the prepetition garnishments as preferential transfers would be lost. While the Court normally disfavors chapter 13 cases in which a debtor files more than three plans, the five plans in this case reflect a sincere effort on the part of the Debtor. The filing of five plans and four sets of income and expense schedules and the resulting delay and necessity of plan confirmation litigation in a straight-forward chapter 13 case was the fault of Debtor's bankruptcy counsel, not the Debtor. This Debtor is deserving of the protection and benefits of chapter 13 to save his home. He works hard in the oil patch, has suffered two heart attacks and is living a frugal life. Accordingly, it is

ORDERED that the Debtor's Amended Chapter 13 Plan filed March 5, 2026 (Doc. 64) is CONFIRMED. A separate order confirming the plan will enter.

Dated this 30th day of October, 2026.

BY THE COURT:

Joseph G. Rosania, Jr.
United States Bankruptcy Judge